■ ZAPIN, ENDLICH & LOMBARDO, INC., Respondent-Appellant, v CBS COVERAGE GROUP, INC., et al., Appellants-Respondents. [844 NYS2d 189]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered on or about June 12, 2006, which awarded plaintiff $48,678, plus interest from December 31, 2002, and awarded defendant Emek $35,000 in damages, representing amounts paid to settle prior lawsuits relating to office and furniture leases, unanimously modified, on the law and the facts, defendants granted a credit for $18,233 in pre-Metro policy "credits" and $46,202 for "earned premium" accounts receivable, the matter remanded for a determination of prejudgment interest on such recalculated amount owing to defendant Metro, and otherwise affirmed, without costs.

Plaintiff insurance broker/agent claimed that Metro, its former administrative and processing agent, had breached its contract to provide administrative and processing services. Metro and Emek counterclaimed against plaintiff for commissions due on policies managed by Metro during the term of the parties' agreement, as well as commissions owing on certain aged receivables for agency-billed policies, which were overdue

as of February 2001. Emek counterclaimed for amounts that she and her prior brokerage entity, the Emek Group, had expended to settle lawsuits brought by equipment vendors against both Emek and plaintiff prior to the time Metro came into existence. A bench trial took place in early 2006.

Metro contends that the January and February 1999 production reports showed "credits" in the amount of $11,143 and $19,245, of which Metro did not receive its 60% ($18,233) share. These "credits" were monies the insurance companies had deducted from premiums on account of returned commissions or cancelled policies from 1998, i.e., prior to the effective date of the agency agreement, and were amounts that needed to be factored into the total commissions earned so that Metro's share of the commission could be properly determined.

Metro is entitled to a credit with respect to these amounts. Emek and her forensic accountant testified that these sums represented amounts deducted on account of returned commissions or cancelled policies from 1998. Plaintiff's accountant did not dispute how the credits were calculated, and conceded that the amount of credits included in the paid production reports for January and February 1999 were $11,143 and $19,245, respectively. His report expressly noted that these reports contained policy credits for periods prior to January 1, 1999, and that the inclusion of these credits had the effect of understating the commissions earned during the months of January and February 1999. Accordingly, Metro is entitled to its $18,233 share of the commissions once these "credits" are factored in.

Under the terms of the parties' agreement, Metro is also entitled to a credit from plaintiff for $46,202, representing "earned premiums" that Metro had paid the insurance carrier but never received reimbursement from plaintiff.

Metro claims it is entitled to a credit for certain future accounts receivable, contending that an agent earns its premium once its policy is placed. The basis for the trial court's refusal to credit Metro with the full amount of commissions on direct-billed premiums was not unreasonable. The "agent" in this case was plaintiff, and Metro functioned as its "back office," servicing accounts, and preparing billings and collections and the like. Thus, while the "agent" may have earned its commission upon placement of a policy, Metro agreed to render administrative and processing services to plaintiff pursuant to an agreement that precisely delineated its duties. Nowhere therein, nor in any case cited by Metro, does it state that Metro is entitled to its full commission upon placement of a policy,

direct-billed or otherwise. The trial court correctly refused to credit Metro $4,005 with respect to any such commissions, finding no evidence that those amounts were paid or that any services were provided for those installments.

Attorneys' fees were appropriately determined under the circumstances; however, Metro is entitled to prejudgment interest on its breach of contract counterclaim (CPLR 5001), since the evidence showed, inter alia, that plaintiff failed promptly to sign a commingling agreement, and diverted payments owed to Metro to its own account. The amount of prejudgment interest, as well as the date from which the interest is computed, should be determined upon remand.

The trial court correctly rejected plaintiff's arguments that Metro had failed to service its accounts during the last six months of the parties' agreement, since the evidence demonstrated the contrary. Finally, the trial court properly awarded Emek $35,000 in damages, plus interest from January 1, 2003, with respect to her counterclaim.

We have considered the parties' other arguments for affirmative relief and find them without merit. Concur—Mazzarelli, J.P., Saxe, Friedman, Marlow and Williams, JJ.